IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK MICHALEK** *and* **JENNIFER MICHALEK,** | ) | CIVIL ACTION NO.  19-351 |
| | ) | |
| | ) | JUDGE JOY FLOWERS CONTI |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **NATIONWIDE MUTUAL FIRE INSURANCE COMPANY**, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **SHAWN STEELE d/b/a Elites Construction** | ) | |
| | ) | |

MEMORANDUM OPINION

I.      Introduction

Pending before the court in this insurance coverage case is a motion for summary judgment (ECF No. 58) filed by defendant Nationwide Mutual Fire Insurance Company ("Nationwide"), with brief in support (ECF No. 59).  Plaintiffs Mark and Jennifer Michalek ("plaintiffs" or the "Michaleks") filed a response in opposition to the motion (ECF No. 62) and Nationwide filed a reply (ECF No. 64).  The parties thoroughly developed the Concise Statement of Material Facts ("CSMF") and submitted numerous exhibits (ECF Nos. 61, 63, 70).  The third-party defendant, Shawn Steele d/b/a Elites Construction ("Steele") did not participate in the briefing or CSMF.  The motion is ripe for disposition.

II.  Standard of Review

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing *Anderson*, 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 322-23).

> "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences and resolve all doubts in favor of the nonmoving party.  *Doe v. Cnty. of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001); *see Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999).  A court must not engage in credibility

determinations at the summary judgment stage.  *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

When the nonmoving party bears the burden of proof at trial, the moving party may discharge its burden by pointing out "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the moving party has made this showing, the burden then shifts to the nonmoving party, who cannot simply rest on the allegations in the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. Summary judgment is proper in cases where the nonmoving party's evidence in opposition is "merely colorable" or "not significantly probative." *Anderson*, 477 U.S. at 249-50.

A denial of coverage based on an exclusion in the insurance policy is an affirmative defense on which Nationwide bears the burden of proof. *Bitters v. Nationwide Gen. Ins. Co.*, No. CV 21-87, 2021 WL 5631761, at *2 (E.D. Pa. Nov. 30, 2021) ("when an insurer denies coverage based on a policy exclusion, the insurer 'has asserted an affirmative defense, and accordingly, bears the burden of proving such defense.'") (quoting *McEwing v. Lititz Mut. Ins. Co.,* 77 A.3d 639, 646 (Pa. Super. Ct. 2013)).  Because Nationwide will bear the burden of proof at trial to establish its affirmative defense, summary judgment should not be granted "unless a reasonable juror would be compelled to find [the movant's] way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007) (citing *Matsushita*, 475 U.S. at 587). "[I]f there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id.*

III. Factual and Procedural Background

At the summary judgment stage, the facts and all reasonable inferences therefrom must be construed in the light most favorable to the Michaleks, the nonmoving party.  Unless otherwise stated, the facts are gleaned from the joint CSMF (ECF No. 70).

The Michaleks and Nationwide entered into a homeowners insurance policy contract for the Michaleks' home at 3726 School Road, Murrysville, Pennsylvania (ECF No. 70 ¶¶ 1, 2). The home suffered water damage on four separate occasions:  November 6, 2017, December 4, 2017, December 22, 2017, and March 26-27, 2018 (ECF No. 70 ¶¶ 29-69). The home was demolished in 2020 (ECF No. 70 ¶ 80).

On November 6 or 7, 2017, while the Michaleks were in Jamaica, they received a hysterical phone call from Mark Michalek's mother-in-law to the effect that water and mud had poured through the basement and covered the basement, clothes, carpet and everything else in the basement (ECF No. 70 ¶ P-1).  On November 7, 2017, the Michaleks called Nationwide to report the claim. Nationwide did not inspect the property at that time and no photographs were taken (ECF No. 63-4 at 57).

By letter dated November 14, 2017, Nationwide denied the claim based on a policy exclusion.  The letter stated, in relevant part:

> Our review showed that because the rain water seeped into your home through the foundation, the water damage done is considered flood.  We do not cover loss to any property resulting directly or indirectly from flood and or [sic] foundation seepage.

(ECF No. 61-4 at 2).

In a recorded statement on March 13, 2018, Mark Michalek explained that the water came in from the back side of the house where Steele dug the footers for a new addition (ECF No. 61-3).  He explained that Steele had removed the back room of the house and did not put up

4

any kind of gutters on the roof to divert the rain.  *Id.*  Michalek stated:  "We had, uh, some bad rain storms had come through, so water poured off the roof, went down into the, uh, area, and then, uh, poured to the basement."  *Id.* Nationwide's investigator then asked:  "Okay.  And water came in through the foundation on the back of the house?"  Michalek replied:  "Yes."  (ECF No. 61-3 at 3); *see* ECF No. 70 ¶ 4.  In an examination under oath on September 20, 2018, Michalek testified that "the water had came [sic] in the brick ledge down the inside of the wall of our basement."  (ECF No. 63-2 at 60).

In late November or early December 2017, Steele took the entire roof off the home and removed the roof trusses (ECF No. 70 ¶¶ 43-44).  The roof was covered with plywood and Steele added a tarp to protect the residence (ECF No. 70 ¶¶ 45-46).  On December 4, 2017, Michalek discovered water pouring through the ceilings, light fixtures and outlets.  Steele apologized; told Michalek the tarp had holes in it; and advised he would replace the old tarp with a new tarp and clean up the mess (ECF No. 70 ¶¶ 48-49).  It does not appear that the Michaleks filed a claim with Nationwide for this incident.  It is unclear from the record what, if any, damages were caused by this incident.

On December 22, 2017, the Michaleks returned home from a vacation and discovered additional damages due to water running off the tarp, down the wall in the rear of the home and into the residence (ECF No. 70 ¶¶ 52-53).  Michalek went onto the roof to secure the tarp, but put a nail through the main electric line, which knocked him down (ECF No. 70 ¶¶ 55, P-11).  The Michaleks did not contact Nationwide after this incident (ECF No. 70 ¶ 56).  It is unclear from the record what, if any, damages were caused by this incident.[1]

---

[1] Mark Michalek testified that there were no damages to the personal property from the December 2017 events (ECF No. 63-2 at 140).

Steele performed no further construction work after putting the tarp on and sued the Michaleks for breach of contract (ECF No. 63-2 at 90). The Michaleks hired Innovative Remodeling Concepts and Pittsburgh Property Maintenance to resecure the tarp on 4 occasions (ECF No. 70 ¶¶ 57, P-12). The tarp was resecured with wood and straps (ECF No. 70 ¶ 61; ECF No. 63-2 at 158). After the tarp was resecured in December 2017 or early January 2018, there was no water damage to the home through the middle of March 2018 (ECF No. 70 ¶ 61, P-13; ECF No. 63-2 at 130, 158).[2] The tarp system did not experience any issues with snow storms or snow accumulation on the roof (ECF No. 70 ¶ P-24).

In February 2018, the Michaleks hired Stephen Hnat ("Hnat"), a public adjuster, to assist with their claim. On March 13, 2018, the Michaleks and Hnat met with David Heller ("Heller"), an adjuster from Nationwide, to examine the damages at the home. Heller advised them that the estimated damages of $35,000 to $45,000 exceeded his authority and another Nationwide inspector, Edward Silassy ("Silassy"), would evaluate the situation (ECF No. 63-2 at 129-130). Hnat asked whether Nationwide could help with approving temporary roofing, but Heller deferred to Silassy. *Id.* Due to a death in Silassy's family, the next inspection was set for March 28, 2018.

On March 26-27, 2018, there were severe rainstorms with high winds. On March 28, 2018, the Michaleks, Hnat, and Silassy met at the home. It was immediately apparent that the damage to the home was much worse: ceilings were collapsed, furniture was destroyed and floors were buckled (ECF No. 70 ¶ P-18). Mike Zerby ("Zerby"), Nationwide's property claims manager, testified in his deposition about a claim note prepared by Silassy on March 30, 2018, to the effect that every room of the home was affected by water; ceilings had fallen in several

---

[2] Nationwide agrees that was Michalek's testimony, but points out that he moved out of the home in January 2018.

rooms and water was actively dripping from the roof area into the first floor and down into the basement (ECF No. 63-4 at 44).[3]  Zerby understood that the tarps blew off on several occasions and allowed water to enter the property.  (ECF No. 63-4 at 47).

Mark Michalek testified that he asked Silassy to approve a restoration company, but Silassy refused because he was in a fact-finding stage (ECF No. 63-2 at 133).  Mark Michalek stopped at his drycleaners that morning and learned that they had a restoration company; a crew was immediately sent to the home to remove property.  *Id.*  Mark Michalek, his brother, and another worker removed other belongings the next day.  *Id.*

On March 30, 2018, Silassy instructed the Michaleks to submit a Sworn Statement in Proof of Loss (ECF No. 61-13).  The Michaleks did so on May 17, 2018, claiming damages under Coverage A (dwelling) of $221,611.83 (ECF No. 61-14).  On June 1, 2018, attorney Richard DiBella ("DiBella") sent a letter on behalf of Nationwide to Hnat, stating the reasons why the Proof of Loss was rejected (ECF No. 61-15).

On October 18, 2018, Silassy sent a written damages estimate to the Michaleks, stating that the covered damages equalled $72,585.96 (ECF No. 61-16).  The estimate did not identify which water damage events were being covered.  Nationwide sent a payment in that amount to the Michaleks on January 29, 2019.  The payment did not include a contractor's profit and overhead.  At Zerby's deposition on February 16, 2021, Zerby testified: "there's no reason why profit and overhead would not have been included on this estimate."  (ECF No. 63-4 at 59).  Zerby admitted:  "It appears we missed it."  *Id.*  On March 3, 2021, Nationwide sent a revised estimate and a payment of $14,632.82 to the Michaleks to reflect the profit and overhead.  (ECF No. 61-17).

---

[3] The actual claim note was not in the record provided to the court.

The Michaleks' Proof of Loss statement (ECF No. 61-14) was limited to Coverage A (dwelling) and did not refer to personal property.  At his deposition, Mark Michalek claimed that everything left in the house was destroyed in the March 26-27, 2018 storm (ECF No. 61-12 at 11).  The Michaleks estimated that 50% of their furniture was saved (ECF No. 63-2 at 134).  As of the date of the Examination Under Oath, no estimate of personal property loss was provided to Nationwide.  *Id.*  Nationwide determined that losses to personal property were not covered (ECF No. 61-7).

Nationwide was willing to pay reasonable Additional Living Expenses ("ALE") (ECF No. 63-4 at 52).  In a letter dated January 25, 2019, DiBella asked the Michaleks to "submit whatever documentation they may have available to them" to support the ALE claim (ECF No. 61-7 at 3).  Mark Michalek testified that the family stayed with his in-laws, Mary Vanda and Earl Tappan, starting in November or December 2017, while displaced from their home, and paid them $1,000 per month (ECF No. 63-2 at 9).  The Michaleks provided an ALE Summary (ECF No. 63-9) during the litigation, but did not provide Nationwide with supporting documentation, i.e., receipts, for their claimed expenses.


IV. Discussion

The Michaleks assert claims for: (1) breach of contract; and (2) bad faith pursuant to 42 Pa. Cons. Stat. § 8371.  Nationwide seeks summary judgment on both claims.  Nationwide contends that the evidence fails to establish that it owes any additional payments under the policy.  Nationwide reasons that because it did not breach the contract, it is also entitled to summary judgment on the bad faith claim.

A.      Breach of Contract claim

With the exception of the ALE expenses, there are numerous disputes of material fact which prevent the entry of summary judgment on the other aspects of the breach of contract claim.  The court will briefly summarize some of the pertinent disputes.

1.      Denial of coverage for the November 6, 2017 incident

A jury could reasonably conclude that Nationwide wrongfully denied coverage with respect to the November 6, 2017 incident.  Policy exclusions are "strictly construed against the insurer and in favor of the insured." *Nationwide Mut. Ins. Co. v. Cosenza,* 258 F.3d 197, 206-7 (3d Cir. 2001).  Nationwide cites two exclusions in the policy, for damage caused by: (1) "flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind"; and (2) "water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure."  (ECF No. 61-2 at 22).

Nationwide did not conduct an inspection prior to denying coverage.  Nationwide's November 14, 2017 denial letter (ECF No. 61-4) recognized that the November 6, 2017 incident involved rain water.  There are no photographs in the summary judgment record of the November 6, 2017 incident.  Michalek testified that the rain came off the roof, in the brick ledge, and down the inside wall of the basement.  (ECF No. 63-2 at 60).  The only evidence that water came through the foundation wall was Michalek's affirmative response to a leading question from Nationwide's investigator (ECF No. 61-3 at 3). A jury could choose to believe Michalek's other testimony. The court notes that Nationwide provided coverage to the Michaleks after the March 2018 event.

The decisions relied on by Nationwide, *Al Berman, Inc. v. Aetna Casualty & Surety Co.*, 216 F.2d 626, 628 (3d Cir. 1954), and *Richman v. Home Insurance Co. of N.Y.*, 94 A.2d 164, 166 (Pa. Super. Ct. 1953), were both decided after trial (not on summary judgment).  In addition, they are factually distinguishable.  In *Al Berman*, the water came from a break in an underground soil pipe and flowed through a hole in the front foundation wall.  *Al Berman,* 216 F.2d at 628.  The *Al Berman* decision distinguished *Armon v. Aetna Casualty & Surety Co.*, 87 A.2d 302 (Pa. 1952), which rejected a defense based on the "seepage" exclusion where there was no evidence the rain water went through the building's walls.  *Richman* involved flooding that created an accumulation of water more than 6 ½ feet deep, which enabled "the jury to infer that the damage was caused by the backing up of sewers or by the influx of surface waters, rather than by rain admitted 'directly' to the interior of the building."  *Richman,* 94 A.2d at 165-66.

In summary, the record evidence – viewed in the light most favorable to the Michaleks – would permit a reasonable jury to conclude that the damage was caused by rain which did not seep through the foundation and would not fall within the scope of the asserted exclusions.

>2. Damages

There are also material disputes of fact about what damages will be recoverable. Nationwide's summary judgment motion is premised on the conclusion that there is no coverage for the November 6, 2017 incident.  For the reasons set forth above, a jury could conclude that the Michaleks are entitled to coverage.  The record does not provide any basis to determine what damages are attributable to the November 6, 2017 incident.  Similarly, it is unclear what damages the Michaleks are seeking to recover for the December 4, 2017 or December 22, 2017 events, and there is no evidence in the record to determine what, if any, losses are due to those incidents.  There is also no basis to determine, on this record, the amount of damages attributable

to Steele's actions.  Nationwide paid the Michaleks more than $87,000, but did not identify what water damage events were being covered.  There appear to be fact disputes about the estimates of damages to the dwelling for which Nationwide did provide coverage. (*Compare* ECF Nos. 61-17, 61-19, 63-10).

The Michaleks' alleged failure to mitigate their damages is an affirmative defense on which Nationwide bears the burden of proof at trial.  *Hena v. Vandegrift*, No. CV 18-762, 2020 WL 1158640, at *30 (W.D. Pa. Mar. 10, 2020).  To win on summary judgment, Nationwide must show that based upon the undisputed facts of evidence, a reasonable jury could find only in its favor.  *Id.* "In order to prove a failure to mitigate, a defendant must establish: '(1) reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced.' " *Id.* (citations omitted). Whether the Michaleks acted reasonably to mitigate their damages is a fact-intensive inquiry that cannot be resolved on this record.

### 3. The "Roof"

Nationwide denied coverage for personal property damages.  The Policy covers windstorm and hail damage, as follows:  "Direct loss caused by rain, snow, sleet, sand or dust driven through roof or wall openings made by direct action of wind, hail, or other insured peril is covered."  (ECF No. 61-2 at 20).  Nationwide argues that this coverage does not apply because the Michalek's home did not have a "roof."

The term "roof" is not defined in the policy.  "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Campayno v. Auto-Owners Ins*., No. 1210 WDA 2016, 2017 WL 3613412, at *6–7 (Pa. Super. Ct. Aug. 23, 2017) (quoting *Egger v. Gulf Ins. Co.*, 864 A.2d 1234,

1242–43 (Pa. Super. Ct. 2004), aff'd, 903 A.2d 1219 (Pa. 2006)) (emphasis omitted); *see Lucker Mfg., A Unit of Amclyde Engineered Prod., Inc. v. Home Ins. Co*., 23 F.3d 808, 814 (3d Cir. 1994) ("We must construe ambiguous language to provide coverage.").

In *Kunji Harrisburg, LLC v. Axis Surplus Insurance Co*., 447 F. Supp. 3d 303, 308 (E.D. Pa. 2020) (involving a similar insurance coverage dispute arising when a windstorm blew a tarp off and water entered the building), the court denied the insurer's motion for summary judgment because it concluded that the term "roof" was ambiguous.  The court explained:  "whether a tarp qualifies as a roof turns on the durability and relative permanence of the covering."  *Id.* at 308.[4] The court identified several factors set forth in the case law:  whether "a reasonably prudent householder would consider [the temporary covering], if left in that condition for a month or months, or longer, as adequate against all risks of wind and rain which could be reasonably anticipated as likely to happen....";  *id.* (quoting *Camden Fire Ins. Ass'n v. New Buena Vista Hotel Co.*, 24 So.2d 848, 850 (Miss. 1946)); and whether the covering was "durable enough to serve its key purposes:  'to cover and protect a building against weather-related risks that reasonably may be anticipated.'"  *Id.* (quoting *Dewsnup v. Farmers Ins. Co.*, 239 P.3d 493, 499 (Or. 2010).

In *Kunji*, the court concluded:  "A tarp that is part of a temporary roofing system thus has been found to be part of a roof."  447 F. Supp.3d at 308.  Like in *Kunji*, here there are material disputes of fact about the durability and relative permanence of the "roof" and how well it was secured that prevent summary judgment.  In November or early December 2017, Steele took the old roof off the house and removed the roof trusses.  The house was covered by plywood and a tarp and was resecured four times by contractors.  Viewed in the light most favorable to the

---

[4] In *Valentino v. Harleysville Preferred Ins. Co.*, No. 360 EDA 2014, 2015 WL 7572410, at *7 (Pa. Super. Ct. Feb. 3, 2015) (non-precedential), the court held as a matter of law that a tarp is not a roof. Nationwide acknowledges that it cannot rely on this non-precedential decision (ECF No. 59 at 9 n.9) (citing 210 Pa. Code § 65.37) ("An unpublished memorandum decision filed prior to May 2, 2019, shall not be relied upon or cited by a Court or a party in any other action or proceeding . . . .").

Michaleks, the second tarp[5] system (as reinforced with wood and straps by the contractor) was in place for several months and was sufficient to protect the house from water and snow damage for the winter of 2017-2018.  Nationwide's inspector, Heller, observed the tarp system on March 13, 2018, but did not recommend or assist with any emergency repairs.  Nationwide – which bears the burden of proof to establish its policy exclusion -- did not present any contrary evidence about durability, relative permanence or the components of the second tarp system.  Nationwide did not submit an expert opinion, which the *Kunji* decision suggested may be helpful.  *Id.* at 308-09 (noting the battle of experts in that case about the durability of the roofing at issue).  As a matter of law, there is insufficient evidence for the court to find that the tarp was not a "roof" or that Nationwide can deny coverage on that basis.

4.    Additional Living Expenses ("ALE")

There is one issue on which Nationwide is entitled to summary judgment.  Based on this record, a reasonable jury could not conclude that the Michaleks provided sufficient evidence of their ALE.  The policy language, in relevant part, imposed a duty on the Michaleks after a loss to "(d) submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief: . . . (7) receipts for additional living expenses. . ." (ECF No. 61-2 at 26) (emphasis added).  An insurer is not obligated to pay claims on demand, with no questions asked; rather, the insured has the burden to show entitlement to coverage.  *Seto v. State Farm Ins. Co.*, 855 F. Supp.2d 424, 432 (W.D. Pa. 2012).  In *Seto*, the court concluded that the insurer acted reasonably in denying an ALE claim where the insured "simply failed to produce sufficient documentation to support their claim for additional ALE benefits."  *Id.*

The Michaleks submitted a Sworn Statement in Proof of Loss within 60 days of being requested to do so by Silassy (ECF Nos. 61-13, 61-14).  The Michaleks also submitted a 1-page

---

[5] The first tarp installed by Steele had holes in it.

listing of their claimed additional expenses (ECF No. 63-9).  It is undisputed, however, that the Michaleks never provided any receipts or supporting documentation of their claimed ALE (ECF No. 70 ¶ 84).  On June 1, 2018, DiBella sent a letter stating that the Proof of Loss Statement was rejected and, among other things, requesting additional documentation to support the Michaleks' claimed losses (ECF No. 61-15).  At his deposition on April 21, 2021, Mark Michalek testified it was "100 percent correct" that he had not undertaken an effort to itemize or quantify the ALE (ECF No. 61-12 at 16).  The evidentiary record is now closed and the Michaleks provided no explanation for why they did not provide any receipts, credit card statements, cancelled checks or other documentation (such as a statement or receipt from Mrs. Michalek's parents for the payments made by the Michaleks to them or on their behalf).  The court concludes that no reasonable jury could find that the Michaleks provided any supporting documentation for the claimed ALE or that the Michaleks complied with the policy requirements for reimbursement of ALE.

For the reasons set forth above, Nationwide's motion for summary judgment on the breach of contract claim will be GRANTED with respect to the ALE expenses and DENIED in all other respects.

B.      Bad Faith Claim

As explained in *Howell v. Progressive Insurance Co.*, No. 2:19CV1111, 2021 WL 5132404 (W.D. Pa. May 11, 2021):

> To prevail on a bad-faith claim, the insured must show that the insurer (1) "did not have a reasonable basis for denying benefits under the policy" and (2) "knew of or recklessly disregarded its lack of reasonable basis in denying the claim." *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (Pa. Super. 1994)); *Rancosky v. Wash. Nat'l Ins. Co.*, 642 Pa. 153, 170 A.3d 364, 377 (Pa. 2017). An insured must prove bad

faith "by clear and convincing evidence." *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d at 179 (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d at 688). This "heightened standard" requires an insured to adduce evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Id.* The insured's burden at summary judgment is "commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d at 137.

*Id.* at *3.

Nationwide's motion for summary judgment on the bad faith claim was dependent on Nationwide obtaining summary judgment on the breach of contract claim.  (ECF No. 59 at 14) (Nationwide argued:  "If there is no coverage pursuant to a plain meaning of a policy and relevant exclusions and definitions, then the insurer could not have acted in bad faith in denying coverage.").  Because Nationwide is not entitled to summary judgment on the breach of contract claim, except with respect to the ALE claim, its motion for summary judgment on the bad faith claim, for the reasons set forth above, will also be denied.[6]

V.  Conclusion

In accordance with the foregoing discussion, Nationwide's motion for summary judgment (ECF No. 58) will be GRANTED as to the ALE expenses and DENIED in all other respects.  An appropriate order follows.

Dated:  April 7, 2022

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge

---

[6] The court notes that the Michaleks pointed to circumstances from which bad faith might be inferred:  (1) Nationwide denied coverage for the November 6, 2017 incident without performing an inspection and Nationwide's investigator asked a leading question to set up the "seepage" exclusion; (2) there was a lengthy delay before Nationwide provided any payment; (3) Nationwide's initial payment omitted the overhead and profit line item (which represented about 20% of the claim); and (4) Nationwide was not proactive in arranging an emergency service vendor or other mitigation assistance.